UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBETTE BYARD,

      Plaintiff,                                                          Hon. Richard Alan Enslen

v.                                                                                   Case No. 1:04-CV-420

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years of age at the time of the ALJ's decision. (Tr. 20). She possesses a General Equivalency Diploma (GED) and worked previously as a child care provider, cashier, and sales associate. (Tr. 20, 78, 85, 92-94).

Plaintiff applied for benefits on December 5, 2001, alleging that she had been disabled since May 15, 1997, due to "violent" headaches and pain in her back and right lower extremity. (Tr. 62-64, 77). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 23-62). On August 18, 2003, Plaintiff appeared before ALJ Douglas Johnson, with testimony being offered by Plaintiff and vocational expert, Dan O'Neill. (Tr. 264-92). In a written decision dated December 15, 2003, the ALJ determined that Plaintiff was not disabled. (Tr. 13-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-7). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 1999. (Tr. 14); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

On March 4, 1985, Plaintiff was involved in a motor vehicle accident. (Tr. 145-50). Plaintiff was taken to a hospital where she reported experiencing head and neck pain. (Tr. 147). An examination revealed "no obvious injuries except small scratch on [her] forehead." (Tr. 147). X-rays of Plaintiff's skull were "normal." (Tr. 148). X-rays of her cervical and thoracic spine were "normal." (Tr. 148). These spinal x-rays revealed "normal" curvature and alignment, "preserved" disc spaces, and no evidence of damage to the vertebral bodies. (Tr. 148).

Plaintiff was subsequently diagnosed with a "strain and sprain" of the cervical and thoracic spine. (Tr. 157). Plaintiff was instructed that she should "avoid heavy lifting," defined as "anything greater than 40 pounds." (Tr. 162). She was further instructed that "when working, [she] should avoid the type of jobs that would require repetitive bending, lifting or twisting, since these types of activities would tend to aggravate her sprain and strain." (Tr. 162).

On June 24, 1988, Plaintiff was examined by Dr. Gary Gurden. (Tr. 183). The results of a "motor exam" revealed "normal strength, bulk, tone and coordination in both the upper and lower extremities." (Tr. 183). Plaintiff's gait was "normal" and she was able to heel/toe walk without difficulty. (Tr. 183). Romberg testing was negative and the doctor discerned no evidence of atrophy or fasciculations. (Tr. 183). Plaintiff exhibited no evidence of reflex abnormality or neurological deficit. (Tr. 183). The doctor concluded that Plaintiff was experiencing a "cervical strain-sprain," for which he prescribed medication. (Tr. 183).

On September 12, 1999, Plaintiff was involved in another motor vehicle accident. (Tr. 181). The administrative record contains no evidence of treatment records regarding any medical treatment which Plaintiff may have received following this accident.

On September 27, 2001, Plaintiff was examined by Dr. Gurden. (Tr. 180). Plaintiff reported that she was experiencing headaches and back pain which radiated into her right lower extremity. (Tr. 180). Plaintiff exhibited "good strength, sensation and reflexes in her lower extremities" and "no pathologic reflexes were seen." (Tr. 180). The results of a neurological examination were "unremarkable." (Tr. 180). Straight leg raising was negative and Plaintiff was able to "bend forward and get her fingertips about 10 inches from the floor." (Tr. 180). Dr. Gurden concluded that Plaintiff was experiencing "musculoskeletal pain." (Tr. 180).

On March 20, 2002, Plaintiff participated in a consultive examination conducted by Dr. Leland Swenson. (Tr. 189-94). Plaintiff reported that she was experiencing headaches, as well as pain in her neck, back, and right hip. (Tr. 189). Plaintiff reported that during a "usual day," she performs housework, cooks, and washes laundry. (Tr. 190). With respect to the examination, Plaintiff "refused to get undressed," asserting that such "is too difficult for her." (Tr. 190). Plaintiff also "refused to lay flat on her back," asserting that "this was too painful for her." (Tr. 190). Plaintiff exhibited restricted range of neck and back motion and complained of pain on "gentle palpation." (Tr. 190-91). Dr. Swenson reported that his "impression" was that Plaintiff exhibited a "[h]istory of two vehicle accidents in 1985 and 1999 with chronic neck and back complaints since and right hip complaints." (Tr. 191). The doctor further noted that Plaintiff "was full of complaints but refused to get undressed so it was difficult to do an accurate exam on the patient." (Tr. 191).

On April 27, 2002, psychiatrist, Dr. Ashok Kaul completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 211-26). The doctor concluded that Plaintiff suffered from "no medically determinable [psychiatric] impairment." (Tr. 211).

5

On August 13, 2002, Plaintiff participated in an MRI examination of her cervical and lumbar spine, the results of which revealed evidence of "mild" disc bulges throughout, with no evidence of disc herniation. (Tr. 228).

On August 20, 2002, Plaintiff was examined by Dr. Matthew Powell. (Tr. 240). Plaintiff reported that she was experiencing neck and back pain. (Tr. 240). The doctor discerned no explanation for Plaintiff's complaints and recommended that Plaintiff consider "herbal or nutritional support." (Tr. 240).

On June 9, 2003, Dr. Powell completed a Medical Assessment of Ability to do Work-Related Activities (Physical) regarding Plaintiff's physical limitations. (Tr. 230-33). The doctor reported that during an 8-hour workday, Plaintiff can sit, stand, or walk for only 30 minutes each and can sit/stand for only one hour. (Tr. 230). The doctor reported that Plaintiff can occasionally lift up to 20 pounds and can occasionally carry up to 10 pounds. (Tr. 230). Dr. Powell reported that Plaintiff can perform "simple grasping" and "fine manipulation" activities with either hand and can occasionally push/pull up to 20 pounds with either hand. (Tr. 231). The doctor reported that Plaintiff can occasionally bend, twist, reach above shoulder level, squat, kneel, climb stairs, crouch, crawl, and stoop. (Tr. 231).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffered from mild degenerative disc disease of the cervical and lumbar spine, a severe impairment which failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 21). The ALJ concluded that while Plaintiff cannot perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

(Tr. 22). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) she cannot climb ropes or ladders; (3) she can only occasionally bend, stoop, twist, kneel, crouch, crawl, or climb stairs; (4) she cannot perform activities which require frequent or full movement of the neck; (5) she cannot perform activities which require the use of her right lower extremity to operate leg/foot controls; and (6) she cannot work at unprotected heights or around dangerous machinery. (Tr. 22). After

reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Dan O'Neill.

The vocational expert testified that there existed approximately 17,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 287-88). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

      a.   The ALJ Properly Assessed the Medical Evidence

On June 9, 2003, Dr. Powell completed a questionnaire regarding Plaintiff's residual functional capacity. (Tr. 230-33). The doctor reported that during an 8-hour workday, Plaintiff can sit, stand, or walk for only 30 minutes each and can sit/stand for only one hour. The doctor reported that Plaintiff can occasionally lift up to 20 pounds and can occasionally carry up to 10 pounds. Dr. Powell reported that Plaintiff can perform "simple grasping" and "fine manipulation" activities with either hand and can occasionally push/pull up to 20 pounds with either hand. The doctor reported that Plaintiff can occasionally bend, twist, reach above shoulder level, squat, kneel, climb stairs, crouch, crawl, and stoop. Plaintiff argues that because Dr. Powell was her treating physician, the ALJ was obligated to afford controlling weight to his opinion, which Plaintiff asserts evidences her disability.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial

medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

In assessing Dr. Powell's opinion, the ALJ observed that the doctor "did not offer objective evidence in support of his conclusions but, rather, appears to have based his assessment upon [Plaintiff's] subjective complaints of pain and discomfort during examinations." (Tr. 19).  As the ALJ further observed, "all diagnostic testing of [Plaintiff] has been indicative of mild findings, at most, and surgery has never been advised." (Tr. 19-20).  Accordingly, the ALJ "considered the conclusory opinion offered by Dr. Powell," but accorded "greater weight. . .to the medical record as a whole which shows a capacity by [Plaintiff] to perform work activity." (Tr. 20).

The ALJ's evaluation of Dr. Powell's opinion is supported by the medical evidence detailed above.  The Court notes that the ALJ's RFC determination is consistent with much of Dr. Powell's opinion.  To the extent that the ALJ found Plaintiff less impaired that did Dr. Powell, substantial evidence exists to support the ALJ's decision to accord less than controlling weight to Dr. Powell's opinion.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 30, 2008

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge